Counsel? Yes, please. Could we make sure that counsel on video can hear us? I can hear you, Your Honor. Are you able to hear me? All right. Thank you. Good morning, Your Honors. My name is John Ulan. I'm a partner of Troy Gould, and I represent the plaintiff and appellant, Planet Green Cartridges. I'd like to reserve five minutes of my time for rebuttal. All right.  Your Honors, this case seeks to hold Amazon accountable for its participation in the destruction of an American industry, printer ink cartridge recycling. The district court's order granting Amazon's motion to dismiss left Planet Green with no effective recourse against Amazon, and that order was based on four essential errors that mandate reversal. First, in finding Amazon immune from all of Planet Green's claims under Section 230 of the Communications Decency Act, the district court ignored material allegations in the complaint and defied this court's admonition that courts must take care not to exceed the scope of the immunity that the statute creates. In simple terms, Section 230 only even arguably applies to claims arising from statements by third parties that are posted over a defendant's website. But Planet Green's claims do not arise exclusively from third-party statements on Amazon's website. The claims also arise substantially from conduct by Amazon that falls outside the scope of Section 230 specifically. The claims arise from, one, Amazon's own promotion of misrepresented clone printer cartridges, including by email and over websites and search engines not controlled by Amazon, that is, statements by Amazon and statements made outside the context of its website. Two, Amazon's importation and distribution of clone printer cartridges in packages and bearing labels that misrepresent their nature and falsely describe them as recyclable and remanufactured. So, Counselor, you're reading to us, so could you just kind of tell us what cases you think support your argument that Section 230 does not immunize Amazon from the claims? I think this Court's cases, for example, in Barnes v. Yahoo, in Colleen's v. Metta, establish a scope for Section 230 immunity. So, to me, the crucial point in this case is what part of the allegations relate to Amazon as a publisher of content and what portion, if any, of the complaint relates to Amazon as a non-publisher. That's the difficult part of this case for me. I agree with that wholeheartedly, Judge Almstead. So, could you enlighten us on what portions of the case plead publishing conduct and what portions of the complaint plead non-publishing conduct, if any? So, if I may focus on the portions that plead non-publishing conduct.  And that was the four steps that I was trying to go through a moment ago, so, and you're  Well, we have limited time. I understand, but what I'm trying to emphasize is there are at least four major categories of statements and conduct that fall outside the scope of Section 230. Well, I don't know if they do, and here's why, to try to focus this. I don't think, by the way, that 230 knocks out everything, but to the extent you're talking about Amazon repeating misstatements that somebody else put on a package, I think you've got a problem. And that's, I think, endemic in most of these claims. What? You seem to be saying that if they, you know, forward those, you know, same images and same statements, same product claims, that they've exceeded the scope of 230. I am saying that in some circumstances, and this relates to some of the allegations of the complaint, when Amazon itself sells the misrepresented product and adopts statements misrepresenting the nature of the product as its own promotion of products that Amazon itself is selling. That's one example of Amazon's So let's talk about that example, because I think that's one of your strongest. So to the extent they're doing that, I think the complaint alleges that sometimes products are returned and then Amazon sells those products. Yes, Your Honor. So they don't repackage the products, right? They don't repackage them. I don't believe they do, but again, that's a matter for discovery that we need to know more about. The complaint doesn't allege that they repackage them. No. We don't have enough information about that yet. I'm understanding this is a mislabeled package, and you object to that, and you have very compelling reasons for objecting to that, but I think they're reselling the same package with the same alleged misrepresentation on it. And under our case law, to get back to Judge Rawlinson's question, I think you'd have to materially add to the falsity of that product. To be clear, Your Honor, when they're selling that product or distributing that product, that's conduct that's not taking place over the Internet. That's not statements on the website. That's conduct by Amazon, including conduct that takes place off of the website. How do you want me to think of... Okay, so that's helpful. That's another tranche. So if you're talking now about Amazon reselling product, and you want me to think of it in a brick and mortar warehouse like Costco. And that in fact exists. Exactly. So now we're completely off the Internet, so that's getting much farther away from 230, okay? Yes, Your Honor. All right. Okay, so to the extent that you're talking about those products that I think you're still not alleging that Amazon mislabels them, or relabels them, forgive me, relabels them. No, we have not alleged that Amazon relabels them. That's true. So let's talk about that subset, because then they're not asking as a publisher. But for those products, for example, I think you allege that there's passing off. Yes, Your Honor. Okay. How is that passing off? It's not relabeled to look like Planet Green's product. And I think the complaint alleges, or you argued, the people buying this don't maybe even know who Planet Green is. So first of all, they don't have to know the exact identity of the producer for it to be passing off. They have to believe that It's not the producer. That's the point. It's still the same product, as I'm understanding it. It's still the same product that is not a counterfeit product, but it's a product that is mislabeled not a Planet Green product, and that's a product that's misrepresented as having this environmentally, this recycled attribute. Sure. The point in passing off is that consumers believe that the product represented as recycled or remanufactured printer ink cartridges comes from the lawful source of recycled printer ink cartridges that they're familiar with from their participation in the market. That's the passing off. It's, in many regards, similar. In passing off cases, we have an identified producer of the product. Would you agree? I don't think it's necessary, and I think, Your Honor, if I may, just to further answer your question, it goes to the level of precision with which one has to identify the producer of the product. Does that producer have to be a... Well, just give me the strongest case that you have to support your argument that in a passing off case, the producer of the item does not have to be identified. What's the strongest case you have for that? So I would think a good example of the sort of... Give me the strongest case legally that you have for the proposition that in a passing off context, the producer of the product does not have to be identified. I would look, for example, at the Supreme Court's decision long ago in Kellogg v. National Biscuit. I don't know if this goes to the question... Kellogg seems to be...  ...the producer. No, well, or National Biscuit was the producer in that case, but the factual scenario is very close to the factual scenario in this case. There was not a trademark used because the term for which trademark protection was sought was deemed to be generic in that case. And there were multiple producers of shredded wheat out there, so there wasn't a singular producer. And yet the court said, you can't use the shredded wheat name or market your shredded wheat product in a manner that confuses consumers about whether it comes from another producer. Ultimately, that claim failed on the merits, on the facts, not at the pleading stage. It failed on the evidence. But the claim was the same. That's quite different from saying you can't use this label, you know, recycled printer, in a way that confuses people that they think they're buying a recycled printer. The passing off cases that we're speaking of, I mean, you know this, right, are cases where something is done to this product where it's passed off as, and people with consumers are allegedly mistaking it and thinking they're getting Planet Green's product. Right. Well, so the district court, for example, apparently would have allowed this claim to proceed if Planet Green was responsible for producing 100% of the recycled, remanufactured printer ink cartridges. If that was the factual scenario, the court would have allowed this claim to proceed. Presumably, even if those folks couldn't identify the actual name Planet Green or couldn't identify that source, which is common in Lanham Act jurisprudence, right, it flows from the trademark rule. We don't have to know the name of the source of the product that's being infringed as to which there's creation of confusion as to source. We simply have to know that's the product to which we are accustomed that comes from the source that, whether known by name or not, that supplies that product. That's the general rule under the Lanham Act and of trademark and unfair competition protection. And the court would have applied it, I apologize, Judge. No, I was just going to say, generally, when we have those cases, we have what we call the senior mark, and then someone who's the junior mark is trying to pass off a product I can't envision a scenario where you don't, you are passing off, but you don't know what the original product is. Well, what the district court envisioned, which is close but not right, was you could have a trademark, and that would be one manner of passing off because you've used a mark that the consumers associate with another product, or you could have a company that produces, in the district court's view, 100% of that product. And so when you sell that product without authorization, you are creating a potential or a likelihood of confusion in the consumer mind that you're selling an authorized version of a product that, in its authorized form, comes from only one company. And the point that we're making is, in a world where the standard is likelihood of confusion and not certainty of confusion, so that 100% of making the product is sort of a certainty of confusion standard. In the world where the standard is likelihood of confusion, something less than 100% still constitutes passing off. So would it be 90%, would it be 80%, would it be 70%? Where would we draw the line, then? What rule would we make that would accommodate your argument? I think we have... Would we say 90%? We would say less than, but we don't know what number? Let me answer the question in two ways, Your Honor. I think what the facts will prove here, and admittedly it's not in the complaint, is that upwards of 90% of that marketplace of legitimate remanufactured products in the United States sold at retail comes from Planet Green, even higher over Amazon. And my answer to your question, where do we draw the line, is this is one of the... And I apologize to talk at you like a trademark professor, which is one of my side lights. But this is one of those circumstances where we will apply a totality of circumstances test that this Court and others have applied repeatedly to address the conditions of likelihood of confusion. It's hard to draw a black letter line. Maybe courts over time will develop a standard as a black letter percentage line, but the better course is to apply the standard analysis that courts have applied to assess and the district courts in this circuit do it all the time. But we're not... The consumer isn't being confused about thinking they're buying Planet Green, right? The consumer, according to your allegations, it's the same package with the manufacturer's name on it, and the confusion is, or the misleading statement is that it's represented to be recycled. I think you're asking... I think Your Honor is asking a factual question that's not ripe for determination at the 12B6 stage. So... Well, how do they... Forgive me. I just don't understand how that can be. I don't see the allegation, even the allegation. So what Your Honor is suggesting is where the box represents it's a different company and a different trademark and maybe a different product and doesn't say Planet Green, that is enough additional information for a consumer to realize this is a different product and not be confused. Your Honor, is it the case that you're contending that a label that says recycled ink cartridge is going to be in a sufficient number of consumers' minds synonymous with Planet Green, that they would be confused into thinking they're buying Planet Green? Ultimately, yes, Your Honor, although I don't think, and we're not alleging, that the consumer would know by name that the producer was Planet Green. And they're not required to know that under the Lanham Act. I have questions about your negligence claim.  And can you explain to me your best argument that there's a duty here? What gives rise to the duty? So this is a duty of ordinary care case. This is not a special relationship case. Duty of ordinary care under the California Supreme Court's precedent in Jericho versus Gregory arises under a six-factor analysis, and the most important one of those factors is the foreseeability of harm to the plaintiff. Under the facts alleged in the complaint, the damage to Planet Green's business, both its sales and its reputation, were a foreseeable consequence of Amazon's sale and distribution of misrepresented printer ink cartridges, and therefore, there was a duty. And this is, again, a claim that flows from the failure by Amazon to verify that the product it was selling and it was distributing, physical product, was consistent with, true to, the representations made on the labeling and packaging of the products. So hopefully that's helpful. It's helpful, I think. You're arguing that Amazon has a duty to verify each product it's selling. The legitimacy, the authenticity of the representations made on each product. Because otherwise it's foreseeable somebody's going to get hurt. Yes, we are arguing that. And an additional fact that reinforces that duty here is that Amazon was three times put on notice of a category-wide problem with misrepresentation in this product class. Twice by my client and once by an independent trade association. So you're not asking us to rule that a duty to inspect arises just because they're reselling things on the internet, which would be extraordinary, in my view? Instead, you're saying they were told three times, and so that gave rise to the duty that they should have looked into this rather than continuing to market a product that's mislabeled? We're saying that there is a foreseeable harm caused by their failure to confirm that the products are true to their labeling. If it goes only that far, forgive me for interrupting, but if it only goes that far, that is true of every product they sell. And we've never come close to that. I can't think of any court that's gone close to that. And again, I want to make two points. That is a point that we're making, that the burden of that sort of review of products where there is foreseeable harm that would flow from the misrepresentations is not extraordinary. And again, if I may. If that's really the position you're taking, then that's not going to be limited to Amazon. It's every grocery store. If I may, just to complete my point, it is not the focus here is on Amazon's own sales of product and Amazon's own distribution of product. That's not the only aspect of the claim. The other aspect of the claim that makes it more forceful in these circumstances is Amazon's knowledge of the category-wide problem that was given both by my client and by the Independent Trade Association and from the Independent Trade Association a very simple verification process that could have been adopted and has not been adopted even to this day. Okay, so I've given you my most skeptical look at the first point that you made, and you've got a limited amount of time. So I'm going to go to the second point. Okay. And you can try to convince my colleagues of the first one. The second point is once we raise it and complain to Amazon repeatedly that this thing's mislabeled, this product is mislabeled, that that gave rise to a duty. So can you tell me, do you have case law that supports that scenario? I don't have it before me, Your Honor. Again, the focus of our duty argument, and I think this is the right way to look at it, and I appreciate, Your Honor, skepticism on this point, is that J.R. Corp. makes clear that foreseeability of harm creates an ordinary, a duty of ordinary care claim. Your Honor may be right. To me, honestly, listening to Your Honor's concern, it seems more a concern about breach than it is about duty. What has Amazon done to satisfy its duty? I think your rule is beyond capacious, and I think it imposes a duty for every retailer to check out every product it's selling. Maybe I misunderstand the rule you're proposing, the one that I just set aside. It may, although I'm not sure we need to analyze the breadth of that, the potential breadth of that rule in a circumstance where Amazon is on notice and has been offered by an independent trade association a verification process, which looks a whole lot like how Amazon engages in verification to prevent the sale of counterfeit goods over its website. So it was a verification process that was implementable and similar to what had been implemented by Amazon. And again, this focuses on sales and distribution of hard goods in the real world that are inconsistent with their labeling and packaging. Thank you. Counsel, you've used most of your time. We'll give you a minute or two for rebuttal. Very well, Your Honor. Thank you. Good morning, Your Honors. Moaz Kava on behalf of Appellatees. And may it please the Court. Plaintiffs' claims, as revealed in the complaint, really all center around an allegation that third-party sellers allegedly mislabeled their products as remanufactured or recycled and that rather than those third-party sellers being liable for that mislabeling, Amazon itself should be liable. The district court assessing a large body of case law under 230 and outside of Section 230 found that plaintiffs cannot satisfy the elements of their claims. The complaint, contrary, I believe, to at least some of the argument here, I think really lays bare what the allegation is. In paragraph 17 of the complaint, the focus again is on Amazon allowing sellers to sell these products, these allegedly mislabeled products. Paragraph 36, Amazon approving seller listings. Paragraph 55, Amazon, or sorry, sellers on Amazon using allegedly, though alleged is not in the complaint, of course, sellers on Amazon using deceptive advertising. May I stop you there to ask you a question? Yes, Your Honor. I think we've, or at least I have communicated my skepticism about that to the extent that there's nothing, that Amazon's not adding anything. But there is an allegation that Amazon adds to some products a badge. And I don't know if there's, my first question is, is there any badge that indicates that a product is green or environmentally friendly? That is not the allegation, Your Honor. The allegation, I'll wait for your second question. No, no, please go ahead. My second question is basically what do those badges do? What do they signify? It just says Amazon's choice. So as the complaint itself acknowledges, the Amazon's choice badge, it's paragraph 50 in the complaint, Your Honor, is assigned via an algorithm that endorses products based on customer feed. This is the complaint's allegation. It's customer feedback, highlighting ratings, price, popularity, availability, and delivery. And Your Honor, that is not much different than Barnes, I'm sorry, Barnes versus Yahoo or Kinsey versus Yelp. There was a similar allegation. Yelp has star ratings and allows allegedly wrongful conduct to be associated with star ratings. The Kinsey versus Yelp case cited a California Court of Appeals case favorably, which was a case against eBay where a similar allegation was made. eBay sort of outed the imprimatur of either a high rating or a badge of some sort. In both of those cases, the Ninth Circuit in Kinsey versus Yelp and the California Court of Appeals in the eBay case found that those sorts of neutral tools, even if it was a badge, even if it was a five-star rating, et cetera, do not take you out of Section 230 land. That itself is not the allegedly unlawful speech, Your Honor, the allegedly unlawful content. Closer. It comes closer. To the extent they're alleging that that is a badge that endorses a product that is mislabeled, it comes closer under our case law to adding to the falsity. What about that? I would say, Your Honor, that because the badge does not purport to say that we have determined that this product is recycled, is remanufactured, or is green, using Your Honor's analogy, I think it actually is much closer to what was happening in Calise and what this court en banc said in the Fair Housing case, which is that it has to be the content, that is the content provided, itself has to contribute to the unlawfulness. The alleged unlawfulness here is the claim of remanufactured. There is no claim that Amazon contributed to making that assertion. If it endorses the claim, that's not contributing to the falsity of it? If it endorses the falsity? It is not, Your Honor, because, one, as I said, the allegation and the complaint is that this Amazon Choice badge is based on things like price, popularity, availability, and delivery. And if, for example, in Calise, the allegations were that Meta went out, solicited, and disseminated fraudulent information, in Kimsey, the allegation was Yelp knowingly took this false information, attached star ratings to it, and then reproduced it, disseminating it through Google. Stop right there, if I could get you to stop right there. His allegation is that they've three times told Amazon, this is falsely labeled, and that Amazon has responded by either responding to that or continuing to indicate that it is Amazon's choice. Amazon has not responded by saying it is Amazon's choice, Your Honor, and that's not the allegation. The allegations in the complaint actually reveal that Amazon, when alerted that there was something here with respect to particular sellers, actually, and the complaint goes into detail about this, Amazon reached out to those folks and said, hey, here's been the allegation, not because Amazon had a duty, Your Honor, going to the duty point that you raised, to do so, but Amazon actually did take steps. And the fact that one party may come forward and say, hey, I think these are falsely labeled. Amazon then takes action to address that issue with the sellers. They can't check every single listing of every single product on this mass, on Amazon.com. That doesn't take them out of Section 230 at all, but it also, Your Honor, doesn't create a duty. Foreseeability of harm, which is why they make that allegation, that we put them on notice and therefore it was foreseeable, has never been accepted as sufficient to create a duty under any case law. And the courts have routinely said the mere foreseeability of harm, even if it is true, does not create a duty. When you add on top of that, Your Honor, the allegation in this complaint that Planet Green is actually a competitor of Amazon's, the case law is clear that there's never a duty owed as between two entities that are allegedly competing with one another. And so I think that what was telling from my colleague's argument is the scope, I'll borrow your words, Judge Kirsten, the scope of what they are trying to impose here would be quite capacious. It would require not just Amazon, the case you just heard, anybody who is selling Catalina Crunch now presumably has a duty, would now have a duty to confirm every allegation, every assertion made on the label there. No case has endorsed such a duty, and particularly in this context, this court's precedents have repeatedly rejected that idea. Counsel, could we turn to the products that are actually sold from the Amazon warehouse? Is there a distinction? There is not, Your Honor, under this court's, as Judge Kirsten was indicating, the issue with the product is that the packaged product purports to be manufactured or recycled, and plaintiff claims or appellant claims here that it is not. There is no allegation that Amazon is doing anything, adding any content whatsoever, changing the packaging in any way whatsoever. Under this court's case law, if you cannot establish or plausibly allege that the defendant is the one making the allegedly false statement, which they cannot do here, they in fact admit the opposite in the complaint, you can't sue that defendant for that statement. That's not quite right. That's not quite right. Our case law would require that Amazon materially contribute to the falsity. In the Section 230 context, yes, Your Honor. I was talking about it even outside of the Section 230. Okay, so let me ask you about that, because I think that's right. Judge Walton was asking to talk about the warehouse. Does this badge only appear online? Yes, Your Honor. It's not in other advertisements? It is. Amazon is not. There's no allegation that, for example, Amazon takes out billboards or that Amazon. But in the warehouse context, when they're reselling this stuff. There's no. Nobody walks into the warehouse, Your Honor. The warehouse itself is actually an online. Yes, but there are allegations that there are advertisements that are sent, that there are other e-mails that are sent. I recognize this is virtual, but I'm trying to figure out where this badge appears. Yeah, according to the complaint, the badge appears online. Where online? Does it appear as a banner on the product, or where is it located in the context of selling these items? My understanding is it's located when the listing comes up. That's my understanding. Is that any different if it's being sold or resold? I'm not sure. Either way, it comes up when the listing comes up. Yeah, that's my understanding, Your Honor. There's not a difference there. Again, price, popularity, how quickly it can get delivered. Your Honor, I don't know if you ever, for example, would go on Amazon.com and search for a product. It may come up because there's a particular product that would get shipped to you more quickly, for example. That may come up as an Amazon's choice, as an example. But again, Amazon is not actually contributing to the false statements in any respect, nor is it alleged to, even with respect to Amazon's choice or any product sold from Amazon warehouse. Your Honor, I'm also mindful. I have nine minutes. I'm mindful that I'm abutting lunch, so I did want to maybe address any questions about passing off. I would like for you to address the passing off issue. So I thought it was telling that in many of these cases, the cases I thought were actually most helpful for my side are the cases that appellant cited. The passing off claim in this case requires, in any case, Your Honor, after the Supreme Court's decision in Kellogg for many years ago, it isn't, I agree, you're using my trademark, but you do have to have sufficient allegations that the primary significance of the term in the minds of the consuming public is not the product but the producer. And here, Judge Kirsten, as you pointed out, Judge Rawlinson, as you pointed out, the allegations actually take them entirely out of that category of claim. There's two in particular. Planet Green admits that consumers may not even know the name Planet Green. It's hard to say that how this remanufactured could, therefore, be associated in their minds with just with Planet Green. But they also say Planet Green is only one of the companies that is selling remanufactured product. The opposing counsel says that our precedent does not require that there be an association with a particular producer of the product. What's your response to that? Kellogg says, Kellogg, the Supreme Court says quite the opposite. There's not a case that Your Honor has been cited to that says that there needs to be no affiliation with the producer at all. I'll cite other cases, Your Honor. Admittedly, this one, a strong one, is from the Fifth Circuit, American Heritage and Life Insurance Company, where the court said, nope, no passing off claim because there's no evidence, sufficiently, allegations that the word heritage is identified with plaintiff by the consuming public. And here, Your Honor, what they are essentially trying to do, again, it's quite a remarkable rule, is say, although we could not get a trademark for the word remanufactured in the ink cartridges context, we should get a backdoor to that through a passing off claim. But they don't own remanufactured, and there is not any sufficient allegation that they are even the only ones that sell remanufactured ink cartridges. What about the negligence claim? What about the negligence claim? I expressed a lot of skepticism about the notion that Amazon would need to check on every one of its products. But his response, your friend's response, is that three times this has been raised to Amazon's attention to say these are falsely labeled and it's decimating this industry. Does that give rise to a duty? It does not give rise to a duty, Your Honor, because then the duty would be created by a party that may be looking to bring suit against another. That duty does not arise under common law. That's why I'm not sure about this, maybe not as pled, but I think it's pretty well known, at least in other cases that we've seen, where people have triggered this procedure that Amazon has, and I think eBay has, and several have. Somebody's marketing a counterfeit product, and there's a procedure, I think, for Amazon to check that out. How is this different? So in those cases, Your Honor, lace-off actually is a Ninth Circuit. It was a district court case. It was a counterfeit product case. The district court ruled both 230 apply, that you can't go after Amazon because other people are suing a counterfeit product. I think it's the wrong defendant. I understand that argument, that for most of these claims it's the wrong defendant. But his argument on this one, on the negligence claim, is once we raise it, tell you that this is a problem, that that may give rise to a duty for Amazon to check to see if it is passing along. I don't mean passing off, but selling products that are mislabeled. So what's your best response? My response is that providing the defendant, in this case Amazon, notice that you believe that there is something wrong with products being sold does not create a duty under any law that exists in California or recognized by this court. The law in California says foreseeability of harm is not sufficient to create a duty. I know, but he acknowledged that. He said California's got a six-part test. Foreseeability is only part of it. We know that. So why doesn't it fit here? Why doesn't it work here when they raise it to your attention? If it's not too burdensome to check on a counterfeit claim, why would it be too burdensome to check on this type of claim? But there is no claim, Your Honor, that even in the counterfeit context, it creates a duty. There may be other sets of claims that you want to assert if Amazon promised to do something and it failed to do that, but that's not a negligence-oriented duty claim. And I would point the court to Dyroff where the court said in that case, and again, it's an online case. We know Dyroff. Yeah, you know Dyroff. And so what you're saying is, and I wondered about this as well, but that's not alleged here, that Amazon could have, may have, but we don't know if it's not alleged here, have a contractual obligation for folks who are participating on their marketplace. But aside from that, he's not alleging that. He's alleging common law duty under California tort law. That's exactly right. And he's alleging a common law duty under the allegations that we are competitors somehow, which has just not been recognized. There is no such duty that flows. Even the allegation, Your Honor, with respect to the contract, the potential sort of contract claim here, they actually allege what the terms of service may say. They don't assert a claim on that basis. But even there, the language used is alleging the complaint is permissive. It's a Amazon may ask you for further information, may take those things down. There's no actionable promise there. I don't think he's asserting one. I don't have any further questions. If you're waiting for me, I'm done. If there are no further questions, I know when it's useful to give back time. Thank you, counsel. Rebuttal. This counsel is so generous, let's have two minutes. I'll be brief, Your Honor. I know I'm the only thing standing between us all and lunch. A few quick points. First, counsel raises the notion that the gravamen or the main thrust of the claims is third-party statements over the Internet. First of all, we've obviously argued that Amazon is deeply engaged in creating those third-party statements. But leaving that aside, the claims have multiple bases, and it was incumbent on the district court to parse out which of those bases is covered by Section 230 and which are not, and to allow those that are not covered by Section 230 to proceed, even if it concluded that some are. And the district court did not do that. Secondly, with regard to this notion that there's an algorithm that digests consumer data and generates advertising and promotions that gets pushed to consumers, either on Amazon's website or over email or through search engine optimization or creates these badges, counsel said, well, that's just a neutral website function that can't give rise to liability because it doesn't change the Section 230 analysis. That may no longer be true. The Supreme Court held in Moody v. Net Choice that that sort of curation of third-party content by a website and promotion of that curation constitutes first-party speech by the website to its users. And the Third Circuit took that a step further in Anderson v. TikTok, which came out in August or came down in August, and held that that first-party speech in the form of curation of third-party posts and pushing those results out to users is first-party speech by the websites that is not covered by Section 230 immunity because it's first-party speech by the websites. Counsel talked about the need to demonstrate that Amazon has created a false statement in order for there to be false advertising or unfair competition liability. Not so. The language of the federal statute is pretty clear on this, Section 1125a1a of the Lanham Act. It is use of a false or misleading statement, not the authoring of a false or misleading statement that gives rise to liability. And there's ample allegations of use. I won't repeat the arguments in our brief, but it is use, not the authoring of that, of those statements. With regard to neutral tools, I just wanted to touch on two quick points. Judge Rawlinson asked whether the use of those false statements did not contribute to the unlawfulness. It does at least two things. It contributes to the magnitude of the harm suffered by the unlawful statements. And in the context of Lanham Act unfair competition-based claim, it contributes to the likelihood that consumers will be confused. And therefore, yes, it does contribute to the unlawfulness of the statements. That is the standard by which lawfulness and unlawfulness is judged in these circumstances. The only other point I wanted to – well, two quick points, if I may. One, to clarify, we are not arguing in passing off that the product doesn't have to be a producer. We are arguing that the consuming public doesn't need to know the name of that producer, doesn't need to be identified. You've exceeded your time, counsel, so please wrap up. Very well, Your Honor. The only other point I would make relates to the Kellogg case. Counsel said we're trying to get an end run around the fact that we couldn't or didn't get a trademark and recycled or recyclable or remanufactured and use a passing off claim as a substitute. Even if that were true, it's exactly what happened in the Kellogg case, and the Supreme Court blessed it. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE